ACCEPTED
04-13-00106-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
6/2/2015 4:36:48 PM
KEITH HOTTLE
CLERK



FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

6/2/2015 4:36:48 PM

KEITH E. HOTTLE
Clerk

DARBY RILEY
BOARD CERTIFIED/CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
darbyriley@rileylawfirm.com

CHARLES A. RILEY, P.C.
charlesriley@rileylawfirm.com

CHRIS RILEY, M.A.
LEGAL ASSISTANT

June 2, 2015

Fourth Court of Appeals
300 Dolorosa, Suite 3200
San Antonio, Texas 78205-3037

Re:  *Barry Brooks et al. v. Excellence Mortgage, Ltd. et al.*,
     Cause No. 04-13-00106-CV

TO THE HONORABLE JUSTICES BARNARD and ALVAREZ:

The appellant loan officers respectfully submit this letter, containing additional citations and succinct comment, with respect to Appellees' Motion for Rehearing:

1.    ANTITRUST CLAIMS

A.    *Motion for Summary Judgment limited to grounds asserted by the Motion*:

Attached hereto are pertinent excerpts from the mortgage company parties' traditional Motion for Summary Judgment. The Motion at CR 126-128 shows the grounds asserted on the loan officers' tortious interference and antitrust claims against the mortgage company parties.

> "When a motion for summary judgment asserts grounds A and B, it cannot be upheld on grounds C and D, which were not asserted, even if the summary judgment proof supports them and the responding party did not except to the motion."

*Roberts v. Southwest Texas Methodist Hospital*, 811 S.W.2d 141, 146 (Tex. App—

San Antonio 1991, writ denied), *quoted in McConnell v. Southside Independent School

District*, 858 S.W.2d 337, 342 (Tex. 1993); T. PATTON, SUMMARY JUDGMENTS IN TEXAS:

PRACTICE, PROCEDURE, AND REVIEW, §3.06[2] (3d ed. 2013).

The mortgage company parties only sought summary judgment on the antitrust

claim on the ground that their action "merely enforced reasonable non-disclosure

agreements." (CR 128-129). The Court's opinion on Motion for Rehearing finds a fact

issue on whether "Excellence falsely claimed it had the sole right to serve the pipeline

customers." Opinion, p. 18. Thus, having found that the mortgage company parties' did

not conclusively prove that the non-disclosure agreements gave them exclusive right to

serve the pipeline customers, the Court properly denied summary judgment on the

antitrust claims.

B.    *The Appellees' New Argument on Causation*

The mortgage company parties go beyond their Motion for Summary Judgment in

arguing that the panel's Opinion on Motion for Rehearing "is inconsistent with appellants

pleaded causation theory" on the antitrust claim. (Appellees' Motion for Rehearing, p. 7).

They point out that the loan officers pleaded that the injunction suit by Excellence

Mortgage, Ltd. was groundless. (Third Amended Original Counterclaim, CR 269-270).

(The loan officers also pleaded that the mortgage company parties "unlawfully" refused

to transfer the loans as requested by the pipeline borrowers). *Id.*

The mortgage company parties cite *Houston Mercantile Exchange Corp. v. Dailey Petroleum Services Corp.,* 1993 WL 322901 (Tex. App.—Houston [14th Dist.] 1993, no writ) for the proposition that a person who initiates a lawsuit is *generally* immune from antitrust liability. The well-recognized exception is where the suit is groundless and/or brought for an anticompetitive purpose, as alleged here. *See In re Burlington Northern,* 822 F.2d 518, 527, 529 (5th Cir. 1987). (Even a successful litigant may be found to have abused the litigation process in order to effectuate an antitrust violation).

Thus, to succeed on this issue, the mortgage company parties had to first, move for summary judgment on that ground, and second, conclusively prove that the suit was not groundless and was not brought for an anticompetitive purpose. The mortgage company parties did neither. The Court has properly denied summary judgment on the antitrust claim.

2.    TORTIOUS INTERFERENCE

A.    As the Court found in its Opinion on Motion for Rehearing, page 22, the sole ground asserted by the mortgage company parties for summary judgment on the tortious interference claim is the contention that they "engaged in no tortious or wrongful conduct" that prevented the pipeline customers from dealing with the loan officers. CR 126-127. The Court had previously found that the loan officers had raised fact issues on each element of an antitrust claim; it thus properly held the antitrust violation was an unlawful act to support the tortious interference claim. *Id.*

B.     The mortgage company parties contend (Appellees' Motion for Rehearing, pp. 9-10) that "appellants' pleadings did not base the tortious interference claim upon an antitrust violation.   See CR 265-66."     However, the loan officers' Response to the mortgage company parties' Motion for Summary Judgment clarifies the "unlawful conduct" complained of in the Third Amended Original Counterclaim.  *Id.*  At CR 281-82, the loan officers laid out the extensive unlawful conduct, including the antitrust violations, and cited the Texas Antitrust Statute.  Where, as here, there was no objection to the lack of a supporting pleading, "[a] movant may ... try by consent an issue raised by the non-movant in its summary judgment response which is not pled in its petition."  PATTON, *supra*, § 3.06[1], citing *Goodyear Tire and Rubber Co. v. Mayes,* 236 S.W.3d 754, 756 n. 1 (Tex. 2007).

C.     The mortgage company parties contend (Appellees' Motion for Rehearing, pp. 6-7) that the Court should not have accepted the opinions of the loan officers' expert witnesses that the pipeline customers' privacy rights were violated when their files were transferred to Georgetown Mortgage without their knowledge or consent.  This objection was not preserved for appellate review.  Moreover, such rights are spelled out in detail in the FTC's Safeguards and Privacy Rules, 16 C.F.R. § 313.1, et seq.  See also 15 U.S.C. § 6801(a):

> "Privacy obligation policy.  It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."

The mortgage company parties have not contended that they complied with this federal policy or the regulations. The affidavits from the two experts put forth by the loan officers established unlawful conduct by the mortgage company parties, both in transferring the pipeline loan files to Georgetown *without* transfer letters, and in refusing to transfer the files to Premier *with* transfer letters.

Respectfully submitted,

Darby Riley
Attorneys for Appellants

cc:    Samuel V. Houston, III
William H. Ford
Gregory A. Scrivener
(via e-serve)



2010CI16915 -P00067

NO. 2010-CI-16915

| EXCELLENCE MORTGAGE, LTD. | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| | § | |
| | § | |
| V. | § | 225TH JUDICIAL DISTRICT |
| | § | |
| NTFN, INC. D/B/A PREMIER | § | |
| NATIONWIDE LENDING, ROBIN C. | § | |
| MORTON, BARRY BROOKS, HESTON | § | |
| C. KING, STEFEN DOUGLAS BROOKS, | § | |
| JANUARY MAY GOETTE, JOHANNA | § | |
| BARTON, JESSE RODRIGUEZ | § | |
| BENAVIDES, AND SANTEX, LTD. | § | BEXAR COUNTY, TEXAS |

## COUNTER-DEFENDANTS, EXCELLENCE MORTGAGE, LTD., LADTD-1, LLC, GROTHUES FINANCIAL, LTD., GROTHUES BROTHERS MANAGEMENT I, LLC, AND GEORGETOWN MORTGAGE, LLC'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE COURT:

Counter-Defendants, Excellence Mortgage Ltd., LADTD-1, LLC, Grothues Financial, Ltd., Grothues Brothers Management I, LLC, and Georgetown Mortgage, LLC, file this Motion for Summary Judgment on Counter-Plaintiffs' Counter-Claims, and in support thereof, would show the Court the following:

### I. Introduction and Statement of Facts[1]

This lawsuit arises from a dispute between an employer, Excellence, and its former employees, the Counter-Plaintiffs.[2] Excellence is in the mortgage business. Robin Morton was the President of Excellence until her termination on September 24,

---

[1] This recitation of facts is intended to give the Court an overview of the lawsuit and the issues in this motion. Material facts relied upon as summary judgment evidence are specifically cited in the relevant section of the motion below.

[2] There are no separate affirmative claims against LATD-1, LLC, Grothues Financial, Ltd., Grothues Brothers Management I, LLC and Georgetown Mortgage. Ostensibly, the basis for liability against these Counter-Defendants is some agency or participatory theory, but the exact nature of such is unclear in Counter-Plaintiffs' pleading. As such, if Excellence is not liable, neither are the other Counter-Defendants.

**Some pages may not be legible as per original document.**

Clerk Initials: JU
Date: 5-29-12

516203.1



The Counter-Plaintiffs' breach of contract claim seeks commissions they are allegedly owed. Counter-Plaintiffs are not contractually entitled to any commissions. The Production Personnel Compensation Policy unambiguously provides that a voluntarily terminated employee is not entitled to a commission that closed *and* funded after October 1, 2010.[12] An employee who is terminated by Excellence is entitled to "no further commissions."[13] The potential loans at issue are those 91 which were in Excellence's "pipeline."[14] Of the 91 pipeline loans, none closed and funded before October 1, 2010.[15]

Moreover, the documents are extraordinarily clear about whom the customers belong to: Excellence. Counter-Plaintiffs have no right to leave an employer and attempt to strip that employer of its business. There is no basis upon which Counter-Plaintiffs could be legitimately entitled to any commissions for work they are not entitled to.

The unambiguous language of the Production Personnel Compensation Policy provides that the loan officer Counter-Plaintiffs are not entitled to any commission on any loans. Summary judgment for Counter-Defendants is therefore proper on Counter-Plaintiffs' breach of contract claims.

## C.   Counter-Plaintiffs' Interference with Prospective Business Relations Claim

To establish a cause of action for tortious interference with prospective business relationships, a plaintiff must show that (1) there was a reasonable probability that the

---

[12] Exhibit E.

[13] *Id.*

[14] Those are loans that are in some stage of the process starting from initial customer contact but which have not yet closed. The 91 loans are those which Counter-Plaintiffs sought to take with them when they left but which Counter-Defendants enjoined. They are the bases of Counter-Plaintiffs' breach of contract and interference claims.

[15] Exhibit A. Counter-Defendants have produced to Counter-Plaintiffs settlement statements for those which have closed; but in the interest of maintaining borrower privacy, have not attached them.

parties would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Independently tortious means that the Counter-Plaintiffs must prove that Counter-Defendants' conduct would be actionable under a recognized tort. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

The agreements between the parties clearly define who the customers belong to: Excellence. There is absolutely nothing unlawful or tortious about Excellence seeking to retain its customers by enforcing its lawful agreements preventing Counter-Plaintiffs from taking them. The conduct of using the legal process to prevent the loan officers from taking those customers is neither unlawful nor tortious.[16] As is explained below, Counter-Plaintiffs confuse legitimate protection of confidential information contractual provisions with covenants not to compete.

Because Counter-Defendants engaged in no tortious or wrongful conduct, it cannot be liable for tortious interference. Summary judgment is appropriate for Excellence on Counter-Plaintiffs' tortious interference claims.

---

[16] Indeed, the Employment Agreement (Exhibit C) has a provision allowing for injunctive relief for failure to return company information, including customer information, after leaving employment.

## D.   Counter-Plaintiffs' Anti-Trust claims.

Counter-Plaintiffs allege unfair trade restrictions under TEX. BUS. & COMM. CODE § 15.05. To establish that a defendant contracted, combined, or conspired in restraint of trade in violation of section 15.05, a plaintiff must show that the alleged contract, combination, or conspiracy is unreasonable and has an adverse effect on competition in the relevant market. *Winston v. Am. Med. Int'l*, 930 S.W.2d 945, 951–52 (Tex. App.–Houston [1st Dist.] 1996, writ denied). The Texas Antitrust Act does not prohibit all restraints of trade; instead, it prohibits only those that restrain trade unreasonably. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 687 (Tex. 1990). Counter-Defendants did not restrain trade at all, but merely enforced reasonable non-disclosure agreements.

"Non-disclosure agreements are different than non-compete covenants." *Shoreline Gas, Inc. v. McGaughey*, 13-07-364-CV, 2008 WL 1747624 (Tex. App.–Corpus Christi Apr. 17, 2008, no pet.); *citing Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 663 (Tex. App.–Dallas 1992, no writ) (affirming the trial court's summary judgment enforcing a non-disclosure clause despite being accompanied by an unenforceable non-compete covenant); *see also CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 265 (Tex. App.–Houston [1st Dist.] 1996, no writ) (affirming the trial court's denial of temporary injunction enforcing non-disclosure agreement, despite the fact that such agreements do not restrain trade, because trial court could have reasonably found that former employees did not learn any trade secrets during the course of their employment). While non-compete covenants are considered restraints of trade, non-disclosure agreements are not. *McGaughey* at it; *citing CRC-Evans*, 927 S.W.2d at 265; *Zep*, 824 S.W.2d at 663. Non-disclosure agreements do not necessarily restrict a former employee's ability to compete with the former employer, nor do they

prohibit the former employee from using, in competition with the former employer, the general knowledge, skill, and experience acquired in the former employment. *Zep*, 824 S.W.2d at 663. Rather, such agreements prevent only the disclosure of trade secrets and confidential information acquired by the former employee. *Id.*

The agreements do not provide, and Excellence has not asserted, that Counter-Plaintiffs cannot work in the mortgage business. There is no restriction on where, when and for whom that Counter-Plaintiffs can work. There is nothing preventing Counter-Plaintiffs from using their general knowledge, skill, and experience acquired at Excellence. Indeed, Counter-Plaintiffs are using their knowledge and skill and working with a competitor in the same market. What Counter-Plaintiffs cannot do is steal Excellence's existing customers. Excellence's efforts to prevent them from doing so are not a restraint of trade. As such, summary judgment is proper for Counter-Defendants on Counter-Plaintiffs' anti-trust claim.

### E.    Counter-Plaintiff Morton's Claim

Counter-Plaintiff Morton pleads some ill-defined claim to alleged entitlement to brokerage fees. Without stating any specific cause of action, counter-plaintiff Morton alleges unless the 91 pipeline loans were transferred to a licensed broker after Morton's termination, she is entitled to a brokerage fee.[17] There is no authority cited for this position. Summary judgment is proper for Counter-Defendants for at least two reasons: 1) there is no recognizable cause of action for the alleged harm and 2) nothing in Morton's Employment Agreement entitles her to compensation after termination.

---

[17] This appears to be what Counter-Plaintiff is contending although it is difficult to ascertain.